# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**BARBARA B.,**

     **Plaintiff,**

**vs.**                                   **CIVIL ACTION NO. 5:23-CV-00112**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] By Order entered February 14, 2023 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of her complaint (ECF No. 12) and the Defendant's Brief in Support of Defendant's Decision (ECF No. 15).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 12), **GRANT** the Defendant's request to affirm the final decision (ECF No.

---

[1] The Plaintiff also filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, however, this appeal only concerns the ALJ's findings regarding her SSI claim, and she does not allege error with respect to the ALJ's finding that she was not disabled on or before December 31, 2017, her date last insured. (See, ECF No. 12 at 1, fn 1)

15); **AFFIRM** the final decision of the Acting Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

## Procedural History

The Plaintiff protectively filed her application for SSI on November 25, 2019 alleging disability beginning November 2, 2016 because of multiple sclerosis, anxiety, depression, muscle spasms, pain, fatigue, ADHD, migraines and vertigo. (Tr. at 15, 311) Her claim was initially denied in May 2020 (Tr. at 15, 108-123) and again upon reconsideration in October 2020 (Tr. at 15, 143-159). Thereafter, she filed a written request for hearing on November 20, 2020 (Tr. at 205-206).

An administrative hearing was held on February 8, 2022 before the Honorable Francine A. Seraphin, Administrative Law Judge ("ALJ"). (Tr. at 39-59) On May 18, 2022, the ALJ entered an unfavorable decision. (Tr. at 12-38) On June 14, 2022, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 278-279, 280-282) The ALJ's decision became the final decision of the Commissioner on December 16, 2022 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On February 13, 2023, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 7) Subsequently, the Plaintiff filed her Brief in support her complaint (ECF No. 12), and in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 15) Consequently, this matter is fully briefed and ready for resolution.

## The Plaintiff's Background

The Plaintiff was 50 years old as of the application filing date, defined as a "person closely

approaching advanced age" during the underlying proceedings. See 20 C.F.R. § 416.963(d). (Tr. at 30) She has a high school education, and her past work included store manager, cashier, certified nursing assistant, and a house painter (Tr. at 53-54, 313).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 416.920a(c):

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following

five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff satisfied the first inquiry because she had not engaged in substantial gainful activity since November 2, 2016, the alleged

onset date. (Tr. at 18, Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff

has the following severe impairments: depressive disorder; generalized anxiety disorder; bipolar

disorder; degenerative disc disease of the cervical and lumbar spine; spondylosis; radiculopathy;

psoriatic arthritis; carpal tunnel syndrome. (<u>Id</u>., Finding No. 3) At the third inquiry, the ALJ

concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level

of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20, Finding No. 4)

The ALJ then found that the Plaintiff has the residual functional capacity ("RFC") to perform light

work, except:

> the claimant can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can perform frequent fingering, handling, and feeling with the bilateral upper extremities. She can perform frequent overhead reaching with the bilateral upper extremities. She must avoid frequent exposure to extreme cold, vibration, atmospheric conditions as that term is defined in the Selected Characteristics of Occupations (SCO) and workplace hazards, such as moving machinery or unprotected heights. She is capable of performing simple, routine work tasks that are not at an assembly line or production rate pace or involving any strict production quotas.

(Tr. at 23, Finding No. 5)

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work.

(Tr. at 30, Finding No. 6) However, at step five, the ALJ found that based on her age, education,

work experience and RFC, the Plaintiff is capable of performing other jobs in the national

economy. (Tr. at 30, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff has not been

under a disability since November 25, 2019, the filing date of her application. (Tr. at 31-32,

Finding No. 11)

**<u>The Plaintiff's Challenges to the Commissioner's Decision</u>**

The Plaintiff alleges that the ALJ's RFC assessment is flawed because she failed to assess

the total limiting effects of the Plaintiff's psoriatic arthritis and psoriasis, which include her wheelchair/walker related limitations precluding her ability perform light work. (ECF No. 12 at 2) The Plaintiff further indicates that the ALJ also discredited the Plaintiff's subjective complaints, relying on the lack of objective evidence, contrary to the Fourth Circuit's holding in Arakas v. SSA, 983 F.3d 83 (4th Cir. 2020) and Social Security Ruling (SSR) 16-3p; additionally, the ALJ relied on an incorrect regulatory framework in her RFC assessment akin to the situation presented in Dowling v. Comm'r of SSA, 986 F.3d 377 (4th Cir. 2021). (Id. at 3-7)

The Plaintiff also argues that the ALJ did not address the waxing and waning of the Plaintiff's autoimmune disorder – psoriasis – or even evaluated whether it met or equaled the requirements under Listing 8.05 for dermatitis, which should have been done prior to assessing her RFC. (Id. at 8-10) The Plaintiff contends this is critical because her psoriasis caused her to use assistive devices during flare-ups, which necessarily impacts her ability to stand or walk or use her hands for light work. (Id. at 10-11) Additionally, the ALJ did not consider the Plaintiff's autoimmune disorder caused significant fatigue. (Id. at 11-12) The Plaintiff also asserts that the ALJ undermined the Plaintiff's limitations in using her hands and walking/standing capabilities as a result of her autoimmune disorder; in short, the ALJ inflated the Plaintiff's activities of daily living to support the RFC finding. (Id. at 12-15) Because of all these errors, the Plaintiff asks this Court to remand for further proceedings. (Id. at 16)

In response, the Commissioner states that the ALJ appropriately evaluated the Plaintiff's subjective complaints in compliance with legal standards when assessing his RFC, including the Plaintiff's self-described limitations against the entire record, which included the objective evidence. (ECF No. 15 at 9-11) The Commissioner also argues that there is no evidence in the

record that indicates the Plaintiff's psoriasis met Listing 8.05 because there is no medically documented evidence of serious limitation in any extremity. (Id. at 11-13) The Commissioner contends the ALJ properly considered the symptoms related to the Plaintiff's autoimmune disorders, including her use of an assistive device and fatigue, and the evidence did not support the degree of limitations she alleged. (Id. at 13-15) Regarding her use of assistive devices, the Commissioner points out that while the medical record showed that the Plaintiff had been ordered a wheelchair, there was no evidence that it was medically necessary. (Id. at 15-16) The Commissioner notes that while the ALJ did not specifically use the word "fatigue", she nevertheless acknowledged the Plaintiff's fatigue-related symptoms, and found they were not entirely consistent with the evidence: this included her activities of daily living as well as the Plaintiff's response to medication, treatment and other measures – all demonstrating the Plaintiff's condition was stabilized, or reasonably controlled. (Id. at 16-20) In short, the Plaintiff essentially asks this Court to reweigh the evidence to arrive at a different conclusion. (Id. at 20) The Commissioner argues the final decision is supported by substantial evidence and asks this Court to affirm. (Id.)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

The Medical Records Concerning Autoimmune Disorders:

The record shows that the Plaintiff was prescribed topical cream for dermatitis in May 2019

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for the Plaintiff's physical impairments, specifically dealing with psoriasis, along with the associated symptoms, including, but not limited to pain.

(Tr. at 416) She presented to a different family nurse practitioner in January 2020 to establish care, reporting that she wanted some medication to help her muscles and calm her nerves, and she had run out of her previously prescribed medications (Tr. at 442). She complained of muscle cramps and occasional migraines but otherwise did not mention widespread pain, joint pain, or psoriasis symptoms (Id.). Physical examination was normal and revealed normal strength and no edema, and the Plaintiff had a euthymic mood and was in no acute distress (Id.).

The Plaintiff saw a neurologist in February and June 2020 complaining of muscle pain, cramps, and fatigue (Tr. at 487- 494). She was evaluated for possible MS, a diagnosis which was later deemed "less likely" after a brain MRI in April 2021 (Tr. at 494, 702, 732). She also reported migraines since she was a teenager, but she took Topamax and reported the migraines were stable (Tr. at 494). Physical examination findings were consistently normal showing no acute distress, no musculoskeletal abnormalities, normal strength, normal sensation, normal reflexes, normal skin, and normal mental status (Tr. at 487, 495). Nerve conduction studies performed in February 2020 showed some chronic cervical and lumbar radiculopathy with mild median neuropathy (carpal tunnel syndrome) at her wrists (Tr. at 488, 492).

On August 3, 2020, the Plaintiff presented to a dermatologist for a rash on her hands and feet that she described as "flaking, itchy and painful and mild in severity"; she was diagnosed with unspecified dermatitis, neoplasm of uncertain behavior, and pruritis (Tr. at 543). Later that month, she was diagnosed with pustular psoriasis[3] and prescribed a topical cream to use as needed (Tr. at 549-550). The dermatologist noted that psoriasis could represent a "medical emergency" and

---

[3] Pustular psoriasis/psoriasiform plaques are pus filled bumps and if widespread can be life threatening. https://www.aad.org/public/diseases/psoriasis/treatment/genitals/pustular; https://www.aad.org/public/diseases/psoriasis/what/symptoms.

"hospitalization is often required" to manage the disease, though he made no indication at that time that the Plaintiff's psoriasis had progressed to such a level of severity (Id.). In September 2020, the dermatologist noted the Plaintiff's psoriasis had improved (Tr. at 598), but by October 2020, it had worsened, covering 38% of her total body surface area (Tr. at 593, 602). She was also diagnosed with pruritus (itchiness) on her feet (Id.).

In December 2020, the Plaintiff was also diagnosed with psoriatic arthritis, and continued to have psoriasis on 38% of her total body area (Tr. at 589-590, 606-607). She had dactylitis, pustular psoriasis, and psoriasiform plaques with micaceous scale, asymmetrical joint involvement (Id.). She stated that her "psoriasis was detrimental to ADLs" and was advised to begin occlusive therapy by wrapping both hands and feet with Saran Wrap after applying topical medication (Tr. at 589, 606); she was also prescribed Humera injections (Id.). In February 2021 she still had psoriasis and psoriatic arthritis in the same areas along with psoriasiform plaques, and her dermatologist prescribed further medications; she continued to endorse psoriasis "is detrimental to ADLs" (Tr. at 678-679). In March 2021, the Plaintiff reported her conditions were "better with medication and better with therapy" (Tr. at 681).

By May 2021, her psoriasis had reduced to 15% of total body area, but it was severe with psoriasiform plaques (Tr. at 770). She was prescribed cleansers, moisturizers, topical steroids, and Taltz injections (Tr. at 770-771). The Plaintiff's psoriasis was noted to be inadequately controlled/unchanged with medication (Id.). On July 30, 2021, the Plaintiff's dermatologist ordered a wheelchair at her request due to pain from her psoriatic arthritis (Tr. at 840). By August 2021, her psoriasis had spread to her genital area (Tr. at 843-844) She still presented with psoriasiform plaques and dactylitis on her hands and feet along with skin pain (Id.). She was

prescribed Triamcinalone and Methrotrexate sodium along with a new prescription, Celestone injections (Tr. at 844). The dermatologist again noted her need for a wheelchair due to her severe pain; a walker was called in previously, but because the Plaintiff broke out on her hands and feet, she was unable to use it (Id.). During a follow up visit in September 2021, the Plaintiff's psoriasis was "flaring" – it was itchy and she reported that it "gets so severe at times that she has to use a wheelchair." (Tr. at 856)

In January 2022, the Plaintiff's dermatologist concluded that Humira and Taltz failed to improve her symptoms (Tr. at 937). The Plaintiff again endorsed using a wheelchair when the pain from her psoriasis was severe (Id.). Her dermatologist observed that her psoriasis was worsening (Tr. at 938). Since she was unable to pick up her Soriatane prescription, the dermatologist prescribed Triamcinalone and Methotrexate along with folic acid instead (Id.). By March her dermatologist noted that her psoriatic arthritis and psoriasis had improved somewhat and her medication regimen was continued (Tr. at 942-943).

Treatment Records for Pain:

The Plaintiff went to one appointment with a pain management physician in August 2020 for chronic neck and back pain (Tr. at 559). Physical examination revealed she ambulated without difficulty and sat comfortably at rest (Id.). She had intact reflexes and no neurological deficits in her extremities, but she did have limited range of motion in the cervical and lumbar spine (Id.). The physician authorized lumbar facet injections, but the record does not show the Plaintiff received such injections (Tr. at 559-561). At a primary care appointment in December 2020, the Plaintiff complained of tenderness in the back; examination revealed normal strength in her extremities and only minor findings, such as limited range of motion and tenderness in the back (Tr.

at 579). When the Plaintiff presented to an orthopedist for back and neck pain in February 2021, she had similar findings with normal gait, station, strength, and range of motion in her extremities (Tr. at 830).

Prior Administrative Medical Findings:

On May 28, 2020, at the initial level of review, Narendra Parikshak, M.D., a State agency medical consultant, reviewed all of the medical evidence at the time and found that the Plaintiff could perform light exertional work consisting of lifting and carrying 10 pounds frequently and 20 pounds occasionally along with sitting, standing, or walking for six hours each in an eight-hour workday; the Plaintiff could also perform postural activities occasionally, except for no climbing ladders, ropes, or scaffolds; she could frequently reach overhead and that she had some environmental limitations (Tr. at 92-123). On October 5, 2020, at the reconsideration level of review, Rabah Boukhemis, M.D., reviewed the evidence and came to the same conclusions (Tr. at 126-159).

The Plaintiff's Self-Described Limitations:

In the January 2020 "Function Report" she completed in connection with her initial claim for benefits, the Plaintiff reported that she has dexterity issues, making it "hard to do small things" and that cramping in her legs result in a fall risk to her; she also stated fatigue makes it hard for her to do anything at all (Tr. at 321). She said she does light housework and tries to paint a few crafts, but mostly rests or watches TV (Tr. at 322). She stated she cooks and "do[es] wife duties" for her fiancé/boyfriend (Id.). She takes care of her pets; has interrupted sleep and just lets her hair grow because "it is too tiresome to fix." (Id.) It takes her longer to prepare meals, and although she still does most of the household chores and yard work, it takes her longer to do them, or she

simply gives up on doing them (Tr. at 323). She tries to get out, but is usually too tired to do so; she goes grocery shopping once a week; when she goes out, she can go out alone and drives (Tr. at 324). She can pay bills, count change, handle a saving account and checkbook (Id.). She reported painting, gardening, hiking, and fishing, but does not do these things often due to fatigue, pain, and muscle cramps (Tr. at 325). She described having no social life anymore, and has a fear of falling; she estimated that she can walk about thirty minutes before needing to sit and rest for about twenty minutes before resuming; she reported being able to pay attention fifteen to twenty minutes and not finishing what she started; she can follow spoken instructions well, but can follow written instructions after reading several times because of her "ADHD" (Tr. at 326).

**The Administrative Hearing:**

    The Plaintiff's Testimony:

        The Plaintiff testified that she cannot work because she keeps getting sick or she falls (Tr. at 44); she stated that her psoriasis and psoriatic arthritis causes all of her joints to hurt, "from head to toe." (Tr. at 45) She stated she falls due to lower back, hip and leg pain and that it feels like her "skin is ripping off my bones sometimes or my muscles." (Id.) She testified she has fatigue "really bad" and is unable to do yardwork or household chores (Tr. at 46). She has headaches every day and "really bad migraines" once a week or every two weeks that last three to four days, but cannot take medication for them due to liver issues so she just puts a cold rag on and lays down in a dark room (Tr. at 46-47). The Plaintiff testified she also has vertigo about twice a week and double vision three or four times a month; when she experiences vertigo, she has to sit down about thirty to forty-five minutes or longer (Tr. at 47). Due to back and neck pain, the Plaintiff stated she is constantly getting up and moving, and can only sit and/or for about twenty minutes (Tr. at 47-48).

She is unable to walk very far due to a bad limp and she is unable to hold her arms above her head when doing her hair because they get tired (Tr. at 48). Arthritis causes her problems with opening jars and holding things, and also causes her to fall a lot, at least three or four times a month (Tr. at 48-49). She avoids the stairs at her house (Tr. at 50). She estimated she could lift about twenty or twenty-five pounds without it hurting (Id.).

<u>The Vocational Expert's (VE) Testimony:</u>

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the VE testified that the individual would be unable perform her past relevant work as a cashier (Tr. at 54-56). However, the VE  determined the individual could perform other light exertional jobs, including electrode cleaner, laundry classifier, and lens matcher (Id.). The VE testified that being off task more than 15% of the time or absent more than two days a month would preclude all work (Tr. at 56).

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

## **Analysis**

As noted *supra*, the Plaintiff alleges the ALJ incorrectly assessed a light RFC by failing to consider the limiting effects from her psoriatic arthritis and psoriasis, as those impairments cause her to need a wheelchair or walker. It is well known that the RFC assessment lies squarely with the ALJ, and not with any medical provider/examiner. 20 C.F.R. § 416.946(c); <u>see</u> <u>Felton-Miller v. Astrue</u>, 459 Fed. App'x 226, 230-31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC.").

To the extent the Plaintiff asserts that the ALJ's only reference to Section 416.945 and SSR 96-8p is in the "boilerplate passage at the beginning of the decision" warrants remand pursuant to <u>Dowling</u>, 986 F.3d at 387 (ECF No. 12 at 5-6), this assertion lacks merit, which is further demonstrated by the following discussion, *infra*. In any event, the Fourth Circuit noted in <u>Dowling</u>, the ALJ did not cite to these regulatory frameworks *at all*, but instead relied upon the incorrect regulatory framework: SSRs 96-7p and 16-3p, which pertain to the evaluation of a claimant's subjective complaints. <u>Id</u>. And further, unlike in <u>Dowling</u>, the ALJ here considered the Plaintiff's subjective complaints under the two-step test for symptom evaluation, and then went beyond her findings relating to the Plaintiff's subjective complaints when assessing her RFC by considering her response to treatment and medication, as well as the findings of the State agency medical consultants. (Tr. at 23-28) Thus, the ALJ did not treat the RFC and symptom evaluation as "one

and the same." In the case at bar, even though the ALJ cited to the proper framework early on in the written decision, she obviously carried through to the subsequent steps in the sequential evaluation process.

Listing 8.05 (Dermatitis):

Another issue the Plaintiff contends is reversible error is that the ALJ neglected to consider the Plaintiff's psoriasis under Listing 8.05 at the third step of the sequential evaluation process, but does not argue that she indisputably satisfied the requirements under this Listing, or direct the Court's attention to what evidence supports such a finding (ECF No. 12 at 8-9). Regardless, it is notable that the Fourth Circuit does not endorse explicit articulation of each listing at the third step, but noted that substantial evidence supports the step three finding that a claimant does not meet Listing criteria based upon the ALJ's findings at subsequent steps in the analysis. See Cook v. Heckler, 783 F.2d 1168, 1172-1173 (4th Cir. 1986); see also, Marcum v. Berryhill, No. 2:16-cv-02297, 2017 WL 1095068, at *4 (S.D.W. Va. Mar. 23, 2017)(Copenhaver, J.)(" 'the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three,' despite a failure to include a pertinent discussion of the evidence at step three of the analysis.")(citing Kiernan v. Astrue, 2013 WL 2323125, (E.D. Va. May 28, 2013); McDaniel v. Colvin, No. 2:14-cv-28157, 2016 WL 1271509 (S.D.W. Va. Mar. 31, 2016) (finding that the ALJ's step three conclusion was supported by substantial evidence when the evidence was discussed in other sections of the ALJ's decision); Six v. Colvin, No. 3:15-cv-14377, 2016 WL 7040850 (S.D.W. Va. Dec. 1, 2016) (same). Because the ALJ is only required to review medical evidence once in his decision, McCartney v. Apfel, 28 Fed. Appx. 277, 279 (4th Cir. 2002), if elsewhere the ALJ includes "an equivalent discussion of the medical evidence relevant to [the] Step Three analysis,"

remand of the case is not required. McDaniel, No. 2:14-cv-28157 at *4 (citing Capillo v. Comm'r of Soc. Sec., No. 5:15-cv-28, 2015 WL 6509127 at *3 (N.D. W. Va. Oct. 28, 2015)).

To meet Listing 8.05, the Plaintiff must show her psoriasis, which is a form of dermatitis, resulted in "*extensive* skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. pt. 404, subpt. P, app. 1, § 8.05 (emphasis added). "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a *very serious limitation*." 20 C.F.R. pt. 404, subpt. P, app. 1, § 8.00(C)(1) (emphasis added). Examples of such extensive lesions are:

a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. pt. 404, subpt. P, app. 1, § 8.00(C)(1)(a)-(c). As noted *supra*, the record does not contain evidence of such limitations – there is no notation or observation by any of the Plaintiff's treating providers that record such functional limitations, notwithstanding the fact that the Plaintiff had been receiving treatment for psoriasis for well over a year. In short, the Plaintiff has not shown the ALJ committed prejudicial error by failing to consider her psoriasis under the listed impairments at step three. Additionally, the ALJ's discussion of the evidence as it related to her psoriasis in the subsequent steps of the sequential evaluation process further demonstrates that substantial evidence supports a finding that the Plaintiff's psoriasis did not meet Listing levels, further supporting the conclusion that the ALJ did not commit reversible error at this step as it relates to

the Plaintiff's psoriasis. Accordingly, the undersigned **FINDS** the ALJ's step three determination is supported by substantial evidence.

<u>The Plaintiff's Need for an Assistive Device and Alleged Fatigue:</u>

Regarding the Plaintiff's need for an assistive device, the ALJ noted the Plaintiff "does not have a documented need for an assistive device (either one handed or two handed)", as objective examinations are generally unremarkable (Tr. at 20).[4] The ALJ recognized that the Plaintiff requested a wheelchair because of pain associated with her psoriasis in July 2021, and that at the time, she was experiencing "a flare of psoriasis affecting various areas such as her feet, palm, and thigh." (Tr. at 25, 840) The ALJ also noted that the record showed the Plaintiff had previously ordered a walker, but a breakout on her hands and feet made her unable to use it (Tr. at 25, 844). Social Security Ruling (SSR) 96-9p provides further guidance when the issue of hand-held assistive devices arises:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

<u>See</u>, *Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at \*7. (**bold** in original)[5] The medical record contains no documentation establishing the Plaintiff's alleged need for an assistive device or a wheelchair that would trigger the ALJ's

---

[4] The ALJ discussed the evidence of record related to the Plaintiff's psoriatic arthritis under Listing 1.18 and 14.09.

[5] Although SSR 96-9p is an explanation of the RFC for a less than full range of sedentary work, the Plaintiff cites this Ruling as support for her argument that the use of an assistive device would necessarily impact her ability to perform the greater requirements under light work for walking, standing, and using her hands for grasping, holding, and turning objects pursuant to Section 416.967(b). (ECF No. 12 at 10-11)

obligation for further review of the evidence under this Ruling. See, e.g., <u>Cowin v. Berryhill</u>, 2017 WL 710542, at *3 (D.S.C. Feb. 23, 2017) (no explanation for the circumstances under which cane or wheelchair would be necessary as required by SSR 96-9p); see also, <u>Timmons v. Colvin</u>, 2013 WL 4775131, at *9 (W.D.N.C. Sep. 5, 2013) (because there was no evidence showing cane was medically required or law requiring an ALJ to consider the impact of a non-required device, the ALJ did not err in finding the plaintiff could perform light work); <u>Helms v. Berryhill</u>, 2017 WL 3038154, at *8 (E.D. Va. Jun. 30, 2017), *report and recommendation adopted*, 2017 WL 3032216, AT *1 (E.D. Va. Jul. 17, 2017)("If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive device in the RFC assessment.") Indeed, the sole evidence supporting the Plaintiff's need for an assistive device is her request for same to her dermatologist reportedly due to pain from psoriasis.[6]

      While the ALJ acknowledged the Plaintiff's testimony of falling three to four times a month because of her lower extremities giving out, as well as having a "bad limp" (Tr. at 23), the ALJ compared these statements with the medical evidence and other evidence of record, noting that her physical examinations have been largely unremarkable aside from reports of pain and diminished range of motion in her back and neck (Tr. at 24), for sample: primary care records in January 2020 showed the Plaintiff exhibited 5/5 muscle strength in both upper and lower extremities (Tr. at 24, 442); in June 2020 the Plaintiff's treating neurologist completed a physical examination and found the Plaintiff had a normal gait and station and normal strength in all limbs (Tr. at 25, 487-488); in February 2021, she was observed to have a normal gait and station and

---

[6] Interestingly, the Plaintiff never mentions her need for a wheelchair or walker or any other assistive device during her testimony before the ALJ.

able to perform tandem gait testing without difficulty and exhibited normal range of motion of the extremities (Tr. at 25-26, 830);  and while the Plaintiff was observed to have an antalgic gait during an examination in March 2021, she had intact sensation throughout, normal muscle tone, normal reflexes and 5/5 muscle strength in upper and lower extremities (Tr. at 26, 788). Of further interest here is that while the Plaintiff contends she requires an assistive device to ambulate because of her painful psoriasis, there is no notation in the record that she presented for follow up appointments with her dermatologist or other medical providers with a walker, wheelchair, or other assistive device since a wheelchair was ordered for her. (See, e.g., 843, 850, 856[7], 889, 937, 942)

Regarding the other evidence of record, the ALJ noted the Plaintiff reported painting murals in her craft room in 2022 without any discussion of difficulties with her hands (Tr. at 26, 883).[8] Moreover, earlier in the written decision, the ALJ noted that the Plaintiff reported driving, going out alone, grocery shopping, attending to her personal care, as well as performing household chores. (Tr. at 21-22, 321-328, 338-345)[9] The foregoing demonstrates that the ALJ adequately discussed the Plaintiff's alleged need for an assistive device, but under the circumstances, she was not required to give it further consideration, resulting in no error.[10]

---

[7] During the follow up visit in September 2021, it was noted that her psoriasis was "flaring", however, it was further noted that the Plaintiff presented as well developed and well-nourished and in no acute distress.

[8] It is noted this record concerned a "telemedicine visit" regarding the Plaintiff's mental health treatment.

[9] In addition to other citations in the medical record, the ALJ referenced the Plaintiff's statements in her Function Reports from January and July 2020. At that time, the Plaintiff did not indicate having to use an assistive device (See, Tr. at 327, 344).

[10] To the extent the Plaintiff also takes issue with the light RFC assessment as it relates to her ability to use her hands to grasp and to hold and turn objects or even walk or stand when she had to cover her hands and feet with Saran Wrap after applying medication for her psoriasis or due to carpal tunnel issues (ECF No. 12 at 11, 12-13), there is no notations in the record from her medical appointments when a provider observed that her hands and/or feet were covered with Saran Wrap, and further, there is no indication as to *when* or what part of the day the Plaintiff would apply her topical medications and wrap her hands and feet. It is reasonable that the timing of such self-treatments can have an impact on whether the Plaintiff can perform light work during a normal eight-hour workday.

Regarding the Plaintiff's argument that the ALJ "never once mentioned the word fatigue" in her decision (ECF No. 12 at 11), it is accurate that the ALJ did not use that word in her decision, however she did consider the Plaintiff's complaints of not being able to lift her arms "too long due to them becoming tired" (Tr. at 23). While the Plaintiff asserted during her testimony and in her application for benefits that her "fatigue" was "really bad" making it hard to do "anything at all" (Tr. at 46, 321, 325), it is noted that she reported "fatigue" (as being "tired all the time") just a couple of times to her treating providers during the relevant period (See, e.g., Tr. at 574, 642); significantly, none of the Plaintiff's medical providers opined or indicated that she suffered any functional deficits due to fatigue. Moreover, the Plaintiff does not specify what evidence other than her testimony or statements suggests she has functional deficits as a result of fatigue.

Evaluating Subjective Symptoms:

To the extent that the Plaintiff alleges the ALJ made other findings that "purportedly undermine" her "credibility" (ECF No. 12 at 12), it is noted that SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 416.929 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's

alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 416.929(c)(3).

As an initial matter, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

Recently, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence

which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

In the written decision, the ALJ noted the following regarding the Plaintiff's physical impairments:

> The claimant reported that she could not work due to falling, being sick, or otherwise being down for days after working. She reported falling 3-4 times per month due to her ankles giving out or a cramp in her leg causing her to leg to give out. She reported neck stiffness and pain preventing turning. She also reported psoriatic arthritis in multiple locations such as her shoulders, arms, and hands. She described pain in various areas as well as falling. She reported needing to get a up after sitting for 20 minutes and move due to her back pain. She reported being able to stand about 15-20 minutes. She described herself as having a bad limp. She reported she could not lift her arms too long due to them becoming tired. She also described problems gripping objects due to carpal tunnel syndrome (CTS) or arthritis. She reported difficulties with various postural activities, such as climbing ladders, ropes, and scaffolds. She reported being able to lift about 20-25 pounds.

(Tr. at 23) After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 24)

The ALJ then reviewed the medical records, discussed *supra*, and made several significant observations, for instance: the Plaintiff's treatment was generally successful, as she often demonstrated full strength and normal gait with no acute distress (Tr. at 24-25, 487, 495, 579, 830); also, State agency physicians reviewed the evidence of record, including the Plaintiff's statements concerning her activities of daily living and function reports and found the Plaintiff could perform light work with some non-exertional limitations (Tr. at 28, 92-107, 108-123, 126-

142, 143-159). Specifically, as it pertained to the Plaintiff's autoimmune disorders, including psoriatic arthritis, the ALJ acknowledged that it presented with a rash that would at times flare up and caused intermittent joint pain (Tr. at 24). Further the ALJ noted that her psoriasis was treated with creams, lotions, medications as well as injections (Tr. at 24, 416, 541-554, 677-693) and treatment was generally successful, despite the occasional flare-ups (Tr. at 24, 589, 677-693, 768-776). The ALJ further considered the affects of the Plaintiff's psoriasis rash, by limiting her to only frequent fingering, handling and feeling as well as avoiding frequent exposure to extreme cold to prevent exacerbation of her symptoms (Tr. at 25).

The aforementioned demonstrates that the ALJ neither "cherrypick[ed]" only that evidence from the record to support her finding of nondisability – nor does the ALJ's analysis demonstrate that she "misrepresent[ed] the extent of [the Plaintiff's] activities of daily living" (ECF No. 12 at 15). Accordingly, the undersigned **FINDS** that the RFC assessment and the subsequent findings in step five of the sequential evaluation are supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's request for remand (ECF No. 12), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the docket of this Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules

6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 22, 2023.



Omar J. Aboulhosn
United States Magistrate Judge